NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| ERIC MARTIN,<br><br>　　　　Plaintiff,<br><br>v.<br><br>ALTISOURCE RESIDENTIAL CORPORATION, WILLIAM C. ERBEY, ASHISH PANDEY, KENNETH D. NAJOUR, ROBIN N. LOWE, and RACHEL M. RIDLEY,<br><br>　　　　Defendants. | Civ. No. 15-24<br><br>**OPINION**<br>**REDACTED** |

THOMPSON, U.S.D.J.[1]

## INTRODUCTION

This matter comes before the Court upon the Motion to Dismiss filed by Defendants Altisource Residential Corporation ("Residential"), William C. Erbey, Ashish Pandey, Kenneth D. Najour, Robin N. Lowe, and Rachel M. Ridley (collectively, "Defendants"). (ECF No. 150.) Plaintiff Eric Martin ("Plaintiff") opposes. (ECF No. 157.) The Court has decided the Motion upon the written submissions of the parties and without oral argument, pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons stated below, the Motion to Dismiss is granted.

## BACKGROUND

### I. Alleged Misrepresentations

This case arises from allegations of securities fraud in violation of Sections 10(b) and

---

[1] The Honorable Anne E. Thompson, United States District Judge for the District of New Jersey, sitting by designation.

1

20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a). Plaintiff represents a putative class of investors in Defendant Residential. (2d Am. Compl. ¶ 1, ECF No. 127.) Defendant Residential acquired sub-performing and non-performing residential mortgage loans and, upon foreclosure, acquired the underlying properties and converted them into single-family rental properties. (*Id.* ¶ 3.) To perform these operations, Defendant Residential had close business relationships with several other companies: Ocwen Financial Corporation ("Ocwen"); Altisource Asset Management Corporation ("AAMC"); and Altisource Portfolio Solutions, S.A. ("ASPS"). (*Id.* ¶¶ 2, 4.) Ocwen serviced the loans. (*Id.* ¶ 4.) AAMC provided managerial services. (*Id.*) ASPS managed the converted rental properties. (*Id.*; *see also id.* at 3 fig.) During the relevant time period, Defendant Erbey was Chairman of the Board of Directors of Defendant Residential and for each of the other companies was the largest individual shareholder as well as either Chairman or CEO. (*Id.* ¶ 2, 22.) Each of the other Defendants was an executive in both Defendant Residential and AAMC. (*Id.* ¶¶ 23–26.)

Plaintiff alleges that Defendants made two categories of fraudulent statements to investors. First, Defendants represented that Defendant Residential's relationship with Ocwen was an asset, claiming that Ocwen was an industry leader providing superior services and that the relationship would provide "significant competitive advantages." (*Id.* ¶¶ 99, 101, 126.) Defendants also warned that if Ocwen could not service loans in the future, this could "adversely affect" Defendant Residential. (*E.g.*, *id.* ¶¶ 101, 109, 189, 200.) In reality, Ocwen was under investigation by state and federal investigators and entered into settlements and consent orders. (*See id.* ¶ 35–36, 64–82.)

Second, Defendants represented that they would conduct all related-party transactions in accordance with the company's internal controls. Defendants disclosed potential conflicts of

interest that Defendant Residential could have with Ocwen, AAMC, and ASPS as well as Home Loan Servicing Solutions, Ltd. ("HLSS"), another company chaired by Defendant Erbey. (*E.g.*, *id.* ¶ 103, 111, 172.) Nevertheless, Defendants assured investors that they would "seek to manage these potential conflicts through dispute resolution and other provisions of [their] agreements with [the other companies] and through oversight by independent members of [their] Board of Directors." (*E.g.*, *id.*) They also announced and reiterated the following policy for transactions involving directors, executive officers, family members, and major stockholders:

> Any situation that potentially qualifies as a conflict of interest is to be immediately disclosed to the General Counsel to assess the nature and extent of any concern as well as the appropriate next steps. The General Counsel will notify the Chairman of the Board of Directors if any such situation requires approval of the Board of Directors. Related persons are required to obtain the prior written approval of the Audit Committee of the Board of Directors before participating in any transaction or situation that may pose a conflict of interest.

(*Id.* ¶¶ 60, 132, 170, 193.) Defendants repeatedly told investors that the CEO and CFO had "concluded that the disclosure controls and procedures were effective" (*e.g.*, *id.* ¶¶ 116, 144, 242, 258) and issued certifications purporting to disclose any deficiencies or weaknesses in internal controls and any fraud related to internal controls (*e.g.*, *id.* ¶¶ 117, 145, 243, 259; *see also id.* ¶ 218 (stating that waivers from the Code of Business Conduct and Ethics would be disclosed)). Finally, Defendants specifically disclosed Defendant Erbey's executive positions and ownership interests in other different companies and explained that, "[d]ue to the nature of Mr. Erbey's obligations to each of the companies, he recuses himself from decisions pertaining to any transactions between them." (*Id.* ¶ 219.)

## II. First Motion to Dismiss and Subsequent *Cambridge* Decision

On March 22, 2016, Defendants moved to dismiss the First Amended Complaint for failure to state a claim. (ECF No. 55.) After reviewing the parties' written submissions and conducting oral argument, the Court denied the Motion. (Op., ECF No. 72; Order, ECF No. 73.)

3

The Court found that Defendants' statements suggesting that Ocwen was an asset to Defendant Residential were misleading because Ocwen was facing investigation at the time. (Op. at 8–18.) The Court also found that Defendants' statements concerning its protocols on related-party transactions were misleading, because Defendant Erbey did not follow internal controls *with regard to other companies* and this fact was sufficient to imply that internal controls were not followed with Defendant Residential either. (*Id.* at 20–21.)

Subsequently, on November 14, 2018 the Third Circuit decided *City of Cambridge Retirement System v. Altisource Asset Management Corp*, 908 F.3d 872 (3d Cir. 2018). That case alleged securities fraud against AAMC and the same individual Defendants as in this case, and it contained very similar allegations to those made here. *Id.* at 874, 880. The court in *Camridge* held that plaintiffs failed to state a claim against AAMC under Section 10(b) because they failed to demonstrate that defendants had made any false or misleading statement. *Id.* at 883.

In *Cambridge*, defendants' statements about AAMC's relationship with Ocwen (which are practically identical to the statements made in the present case) were not false or misleading. Statements touting its relationship with Ocwen as an asset were not misleading because AAMC had no obligation to disclose Ocwen's regulatory violations, especially since those violations were well-known. *Id.* at 882. Statements citing Ocwen's superiority in the field were subjective and therefore not false. *Id.* at 882 n.8. And statements warning about the adverse effects that could result from Ocwen's future inability to service loans were not misleading because "AAMC had [no] reason to believe that Ocwen, whatever its flaws, would be unable to service all of the loans [Defendant Residential] sent its way." *Id.* at 881.

*Cambridge* also held that statements concerning AAMC's internal controls (which, again, are practically identical to those made here about Defendant Residential's internal controls) were

4

not false. Plaintiff failed to "identify[] a single AAMC transaction in which Erbey improperly participated." *Id.* at 883. And allegations regarding Defendant Erbey's conduct in other companies could not create an inference that Defendant Erbey had done the same at AAMC. *Id.* at 882–83. Without evidence of a specific instance where AAMC's internal protocols were not enforced, its statements about those protocols could not be deemed false. *Id.*

**III.     Second Amended Complaint and the Present Motion to Dismiss**

Plaintiff filed the Second Amended Complaint on October 10, 2018, approximately one month before the *Cambridge* decision. (ECF No. 127.) The only substantive changes from the previous complaint are new facts to help establish that Defendants did not follow internal controls and that, therefore, their statements concerning those controls are false or misleading. (*See* Redlined 2d Am. Compl., ECF No. 163.) Specifically:

1. ███████████████████████████████████████
   ████ (2d Am. Compl. ¶ 105.) ████████████████
   ███████████████████████████████████████
   ██████████████████████████ (*Id.*)

2. ███████████████████████████████████████
   ███████████████████████████████████████
   ███████████████████████████████
   ████████████████████████ (*Id.* ¶¶ 123, 196, 261.)
   ███████████████████████████████████████
   ████████████████████████████ (*Id.*)

3. ███████████████████████████████████████
   ███████████████████████████████████████
   ███████████████████████████████████████

5

███████████████████████████████████████ (*Id.* ¶ 124.)

4. ███████████████████████████████████████████
███████████████████████████████████████████████
████████████ (*Id.* ¶ 156.)

5. ████████████████████████████████████ (*Id.* ¶ 174.)
██████████████████████████████ (*id.* ¶ 23), ██████
███████████████████████████████████████████████
████████ (*Id.* ¶ 174.) ████████████████████████
███████████████████████████████████████████████
█████████████████████████████ (*Id.*)

6. ████████████████████████████████████████
███████████████████████████████████
███████████████████████████████████████
████████████████████ (*Id.* ¶ 175.)

7. ███████████████████████████████████████████
███████████████████████████████████
███████████████████████████████████████
███████████████████████████ (*Id.* ¶ 204.)

8. ████████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████ (*Id.* ¶ 205.)

9. ███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████ (*Id.* ¶ 209.) ██████████
███████████████████████████████████████
███████████████████ (*Id.*)

10. ██████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████ (*Id.* ¶ 210.)

11. ██████████████████████████████████████
███████████████████████████████████████
█████████████████████ (*Id.* ¶ 245.)

12. ██████████████████████████████████████
███████████████ (*Id.* ¶ 262.)

The Second Amended Complaint alleges that all Defendants violated Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5 (Count One) (*id.* ¶¶ 313–23) and that the individual Defendants violated Section 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t(a) (Count Two) (*id.* ¶¶ 324–26).

Defendants filed the present Motion to Dismiss on December 7, 2018, arguing among other things that *Cambridge* compels dismissal of the Second Amended Complaint. (Br. at 5–13, ECF No. 150-1.) Plaintiff opposed on January 5, 2019. (ECF No. 157.) Defendants replied on January 24, 2019. (ECF No. 161.) The Motion is presently before the Court.

## **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must "review[] the complaint to strike conclusory allegations." *Id.*; *see also Iqbal*, 556 U.S. at 679. Finally, the court must assume the veracity of all well-pleaded factual allegations and "determine whether the facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (quoting *Iqbal*, 556 U.S. at 679); *see also Malleus*, 641 F.3d at 563. If the complaint does not demonstrate more than a "mere possibility of misconduct," it must be dismissed. *See Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

Additionally, in a securities case, the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u–4, imposes a more demanding pleading standard. To allege a false or misleading statement or omission, the complaint must, "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation

regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." § 78u-4(b)(1). This is effectively the same pleading standard as provided by Rule 9(b) of the Federal Rules of Civil Procedure, which requires that the complaint "state with particularity the circumstances constituting fraud." *Inst. Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009).

## **DISCUSSION**

Section 10(b) and Rule 10b-5 prohibit "mak[ing] any untrue statement of a material fact or [omitting] to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b). A plaintiff must demonstrate "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37–38 (2011) (citing *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008)); *accord City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 167 (3d Cir. 2014). Because the Second Amended Complaint does not adequately allege the first element—material misrepresentation—it fails to state a claim upon which relief can be granted.

Defendants' statements concerning Ocwen are not misleading in light of *Cambridge*. That case made clear that statements touting Ocwen as an asset do not qualify as false or misleading because some such statements are subjective, *Cambridge*, 908 F.3d at 882, n.8, and because companies other than Ocwen were under no obligation to disclose Ocwen's regulatory violations, *id.* at 882. *Cambridge* also held that statements about the adverse effects that could result from Ocwen's possible failure to service loans are not misleading because there was no

9

reason to believe that Ocwen would not be able to service loans in the future. *Id.* at 881.

Defendants' representations that they would exercise internal controls for related-party transactions are also not misleading, because there has not been a sufficient showing that these internal controls were not followed. In *Cambridge*, where AAMC was a defendant:

> [p]laintiffs' allegation regarding AAMC's recusal policy relies on an inference from Erbey's conduct with regard to *two separate companies*. [W]e cannot credit factual allegations, such as this, which do not rise "above the speculative level." By not identifying a single AAMC transaction in which Erbey improperly participated, the complaint attempts to establish falsity through the very sort of "speculative fraud by hindsight that the [PSLRA] was intended to eliminate."

908 F.3d at 883 (emphasis added) (citations omitted). *Cambridge* therefore explicitly holds that allegations of wrongdoing at by an individual another company cannot imply wrongdoing by the same individual at the defendant company. Therefore, Plaintiff in this case cannot establish falsity by pointing to activity between Ocwen and AAMC (*see* 2d Am. Compl. ¶ 175), or by stating that companies other than Defendant Residential were circumventing their own internal controls (*see id.* ¶¶ 204, 245).

Additionally, *Cambridge*'s reasoning emphasizes that securities fraud complaints must cite to *specific* evidence showing that the statements made were false. 908 F.3d at 883; *see also* 15 U.S.C. § 78u-4(b)(1) ("[T]he complaint shall specify . . . the reason or reasons why the statement is misleading . . . ."); Fed. R. Civ. P. 9(b) ("[A] party must state with particularity the circumstances constituting fraud . . . ."). Following *Cambridge*, then, Plaintiff's general allegations that Defendant Residential was not following internal protocols are insufficient to establish falsity. (*See* 2d Am. Compl ¶¶ 124 (█████████████████████████████████████████████████████████████████████████ (brackets omitted)), 209 (█████████████████████████████████████████████████).)

Additionally, falsity cannot be established by pointing to situations that might suggest impropriety but that do not specify any particular transactions that were conducted in contravention of Defendant Residential's policies. (*See id.* ¶¶ 156 (██████████ ██████████████████████████), 205 (████████ ██████████████████████████████████ ██████████████████████████), 262 (██████████████████████████████).)

Finally, other allegations in the Second Amended Complaint merely show a close business relationship between Defendant Residential and other companies, without showing that Defendant Residential failed to follow internal protocols with regard to those relationships. (*Id.* ¶¶ 105, 123, 124, 174, 196, 209, 210, 261.) These portions of the Second Amended Complaint do not show that Defendants' representations regarding internal controls were false and therefore do not help to support Plaintiff's claim. Because the Second Amended Complaint does not plead any misrepresentation made by Defendants, it fails to state a claim under Section 10(b).[2]

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted. An appropriate Order will follow.

Date: 2/21/19  /s/ Anne E. Thompson
ANNE E. THOMPSON, U.S.D.J.

---

[2] Because the Second Amended Complaint fails to state a claim under Section 10(b) (Count One), it also fails to state a claim under Section 20(a) (Count Two). *See Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 247 (3d Cir. 2013) (explaining that Section 20(a) liability "is derivative of an underlying violation of Section 10(b)" (quoting *Avaya*, 564 F.3d at 252 (3d Cir. 2009))).

11