## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| ERIC MARTIN, Individually and on Behalf of All Others Similarly Situated, | Case No: 1:15-cv-00024-AET-GWC |
| Plaintiff, | CLASS ACTION |
| v. | |
| ALTISOURCE RESIDENTIAL CORPORATION, WILLIAM C. ERBEY, ASHISH PANDEY, KENNETH D. NAJOUR, ROBIN N. LOWE, AND RACHEL M. RIDLEY, | |
| Defendants. | |

## PLAINTIFFS' BRIEF IN SUPPORT OF UNOPPOSED MOTION
## FOR PRELIMINARY APPROVAL OF SETTLEMENT

Kevin A. Rames
VI Bar No. 193
K.A. RAMES, P.C.
Suite 3, 2111 Company Street
Christiansted, St. Croix, U.S.V.I. 00820
Tel: (340) 773-7284
Fax: (340) 773-7282
Email: kevin.rames@rameslaw.com

Nicholas I. Porritt (admitted *pro hac vice*)
Adam M. Apton (admitted *pro hac vice*)
LEVI & KORSINSKY, LLP
1101 30th Street NW, Suite 115
Washington, D.C. 20007
T: (202) 524-4290
F: (202) 333-2121
Email: nporritt@zlk.com
Email: aapton@zlk.com

*Attorneys for Plaintiffs*
*and Lead Counsel for the Class*

# TABLE OF CONTENTS

I.    INTRODUCTION.................................................................................................1

II.    SUMMARY OF LITIGATION AND SETTLEMENT NEGOTIATIONS. ...............3

    A.    Plaintiffs' Claims and Allegations ..........................................................3

    B.    Procedural History .................................................................................3

III.    THE PROPOSED TERMS OF SETTLEMENT........................................................4

    A.    The Class Definition ..............................................................................4

    B.    Monetary Consideration and Plan of Allocation ....................................4

    C.    Release Provisions .................................................................................5

IV.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE. ..........5

    A.    The Settlement Approval Process...........................................................5

    B.    The Proposed Settlement Meets the Requirements for Preliminary Approval under Rule 23(e)(2)......................................................................................6

V.    PROVISIONAL CERTIFICATION OF THE SETTLEMENT UNDER RULE 23 IS APPROPRIATE. ..................................................................................................13

    A.    The Class Members Are So Numerous that Joinder Is Impracticable.................14

    B.    Common Questions of Law or Fact Exist.............................................14

    C.    Plaintiffs' Claims are Typical of Those of the Class. ...........................15

    D.    Plaintiffs Are Adequate Representatives of the Class. ..........................15

    E.    The Requirements of Rule 23(b)(3) Are Also Satisfied. ......................16

VI.    THE PROPOSED NATURE AND METHOD OF CLASS NOTICE ARE CONSTITUTIONALLY SOUND AND APPROPRIATE.........................................17

VII.    PROPOSED SCHEDULE.....................................................................................18

VIII.    CONCLUSION ....................................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Alves v. Main*,
  No. CIV.A. 01-789 DMC, 2012 WL 6043272 (D.N.J. Dec. 4, 2012)............................. 7, 10

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997)........................................................................... 16

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ...................................................................... 14, 15

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001) ................................................... 8

*Blum v. Stenson*,
  465 U.S. 886 (1984)........................................................................ 11

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ............................................................. 6

*Chavarria v. N.Y. Airport Serv., LLC*,
  875 F. Supp. 2d 164 (E.D.N.Y. 2012) .................................................. 13

*In re Community Bank of Northern Virginia*,
  418 F.3d 277 (3d Cir. 2005) ............................................................. 16

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995).............................................................. 14

*In re Datatec Sys., Inc. Sec. Litig.*,
  No. 04-CV-525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007) ................... 12

*In re DVI Inc. Sec. Litig.*,
  249 F.R.D. 196 (E.D. Pa. 2008)........................................................ 14

*In re Gen. Instrument Sec. Litig.*,
  209 F. Supp. 2d 423 (E.D. Pa. 2001) .................................................. 13

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) .............................................................. 13

*Gen. Tel. Co. of Southwest v. Falcon*,
  457 U.S. 147 (1982)...................................................................... 15

*Hefler v. Wells Fargo & Co.*,
  No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 150292 (N.D. Cal. Sep. 4, 2018) ............... 12

*In re Ins. Brokerage Antitrust Litig.*,
  297 F.R.D. 136 (D.N.J. 2013)........................................................... 11

*Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
  No. 03- CV-4372 (DMC), 2009 WL 4730185 (D.N.J. 2009) ............................ 11

*In re Metlife Demutualization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010) ................................................................. 8

*Milliron v. T-Mobile USA, Inc.*,
    No. 08-4149, 2009 WL 3345762 (D.N.J. Sept. 14, 2009) .................................... 11

*Missouri v. Jenkins*,
    491 U.S. 274 (1989) ............................................................................................ 11

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010) ............................................................................... 14

*In re Nat'l Football League Players Concussion Injury Litig.*,
    821 F.3d 410 (3d Cir. 2016) ................................................................................. 6

*In re Ocean Power Techs., Inc.*,
    No. 3:14-CV-3799, 2016 U.S. Dist. LEXIS 158222 (D.N.J. Nov. 15, 2016) ...... 13

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    962 F. Supp. 450 (D.N.J. 1997) ........................................................................... 7

*Riedel v. Acqua Ancien Bath New York LLC*,
    2016 WL 3144375 (S.D.N.Y May 19, 2016) ....................................................... 8

*In re Schering-Plough Corp. ENHANCE ERISA Litig.*,
    No. 08-1432 (DMC) (JAD), 2012 WL 1964451 (D.N.J. May 31, 2012) ............. 11

*In re Schering-Plough Corp. Sec. Litig.*,
    No. 01 Civ. 0829, 2009 WL 5218066 (D.N.J. Dec. 31, 2009) ......................... 9, 17

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) ............................................................................... 13

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. 05 MDL 0165, 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ....................... 12

*In re ViroPharma Inc. Sec. Litig.*,
    No. 12-2714, 2016 U.S. Dist. LEXIS 8626 (E.D. Pa. Jan. 25, 2016) ................. 17

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005) ............................................................... 12

**Statutes**

Fed. R. Civ. P. 23(a) .................................................................................................. 14

Fed. R. Civ. P. 23(b) .................................................................................................. 16

Fed. R. Civ. P. 23(e) ................................................................................................ 6, 13

**Other Authorities**

W. Rubenstein, Newberg on Class Actions (5th ed. 2012) ........................................ 14

*Manual for Complex Litigation*, Third (West ed. 1995) .......................................................... 7, 17

## I.     INTRODUCTION.

Plaintiffs seek preliminary approval from the Court to settle this class action securities fraud lawsuit.[1] After almost four and a half years of hard-fought litigation, Plaintiffs have been able to secure a cash recovery of $15,500,000. This is an excellent result for the class and, if approved, would guarantee a distribution to shareholders in the near term without having to wait any longer, incur any additional expenses, or overcome any more significant litigation risks. The parties will get to put an end to this matter once and for all.

Pursuant to Federal Rule of Civil Procedure 23, approval of settlements in class action lawsuits is completed in two stages. First, the Court must assess whether the settlement appears likely to warrant final approval and, if so, order that notice be provided to potential class members. Second, having allowed notice to proceed, the Court must hold a hearing to evaluate any objections and decide whether the settlement should be confirmed. As explained herein, Plaintiffs meet the requirements for obtaining preliminary approval and, therefore, should be permitted to provide notice of the Settlement to the Class.

The proposed settlement easily meets the criteria for approval at this stage of the process, largely because the history of the litigation, the risks involved, and the recovery at hand weigh heavily in favor of the conclusion that the Settlement is fair, reasonable, and adequate. First and foremost, the litigation has endured for over four and a half years. Plaintiffs and Defendants have engaged in significant motion practice and discovery, including no less than three motions to dismiss, two motions for class certification, and hundreds of thousands of pages of discovery in the meantime. The Settlement, if approved, will provide closure to a matter that has caused already and would continue to cause all parties involved to expend significant amounts of time and resources in litigating.

Second, the cash payment of $15,500,000 represents a recovery of almost 4.5% of Plaintiffs' estimate of total classwide damages. That is an excellent result by all accounts and falls

---

[1] Unless otherwise defined, capitalized terms herein have the same meaning as set forth in the Stipulation and Agreement of Settlement dated October 7, 2019 (the "Stipulation") (Dkt. No. 217).

squarely in line with historical settlements amounts in cases of similar sizes. Indeed, as demonstrated by Cornerstone Research, a leading economic and financial consulting firm, the average settlement as a percentage of total classwide damages in securities fraud cases with damages ranging from $250 million to $499 million is approximately 4%. Similarly, NERA Economic Consulting concluded that cases ranging from $200 million to $399 million historically settled for 2.6% of overall damages.

Moreover, as the Court knows from past briefing, this case is one of a handful of related matters that have settled. The settlements in those cases (which involved the same and/or related entities and similar allegations of wrongdoing) confirm that the Settlement at hand is certainly reasonable: *In re Ocwen Financial Corporation Securities Litigation*, Case No. 14-CIV-81057-WPD, settled for 3.5% of total damages; *In re Altisource Portfolio Solutions, S.A. Securities Litigation*, Case No. 14–81156 CIV–WPD, settled for 5.8% of total damages; and *In re Home Loan Servicing Solutions Securities Litigation*, Case No. 16-cv-60165 (WPD), settled for 1.8% of total damages. The recovery at hand, therefore, provides class members with a strong recovery that was certainly worth the effort.

Third, while Plaintiffs believed in the merits of their case, they faced significant legal and factual obstacles that weighed in favor of the Settlement. For example, Defendants were likely to challenge Plaintiffs' theory of loss causation, a necessary element of Plaintiffs' securities fraud claims. Defendants were also likely to challenge Plaintiffs' theory of liability concerning alleged false statements about RESI's related-party transactions. Although Plaintiffs disagreed deeply with Defendants' arguments on these points, Plaintiffs' recovery could have been severely limited or eliminated entirely if the Court or a jury agreed with Defendants. Thus, the Settlement provides Plaintiffs with a means of eliminating this risk and securing a favorable recovery in the near term.

Plaintiffs have carefully considered this Settlement and believe it to be in the best interests of the class. Accordingly, they respectfully request that the Court grant preliminary approval so that the parties can proceed with certifying a class for settlement purposes and then providing notice, as discussed below in further detail.

## II.   SUMMARY OF LITIGATION AND SETTLEMENT NEGOTIATIONS.

### A.   <u>Plaintiffs' Claims and Allegations</u>

This Action arises from alleged materially misrepresentations contained in RESI's public filings, including press releases, conference call transcripts, and SEC filings. Plaintiffs alleged that Defendants violated the Securities Exchange Act of 1934 and SEC Rule 10b-5.

In particular, Plaintiffs alleged that RESI and the other Defendants misrepresented two aspects of the company's operations: first, that RESI was appropriately following its publicly-stated policies concerning related-party transactions by, among other things, having Defendant Erbey recuse himself from negotiating and approving transactions with RESI's related companies; and, second, that Ocwen was adequately servicing RESI's non-performing loans and/or providing the company with a competitive advantage relative to its industry peers. Plaintiffs' alleged further that they sustained damages when the truth concerning these aspects of RESI's operations became publicly known at several points during the Class Period and caused RESI's stock price to decline. Apton Decl. at ¶6.

### B.   <u>Procedural History</u>

The procedural background of this litigation and the events that led to the Settlement are expansive. The litigation of this case endured for over four and a half years. Among other things, it involved three amended complaints, three motions to dismiss, two motions for class certification, motions for reconsideration, a motion for leave to file an interlocutory appeal, and more than 600,000 pages of discovery.  Despite the exceedingly harsh pleading standards faced by plaintiffs in these sorts of actions, Plaintiffs prevailed to date and litigated this case successfully.

Plaintiffs initially began the litigation with a thorough investigation into RESI's operations and public statements. This investigation included the review of all public statements filed by RESI with the SEC as well as reports from analysts about RESI's operations. *Id*. at ¶4. Plaintiffs managed to compile a comprehensive complaint in support of their allegations of securities fraud against Defendants. This complaint underwent two further amendments during the litigation, resulting in the Third Amended Complaint that is currently the operative pleading. *Id*. at ¶¶11, 16. The Third

Amended Complaint includes a substantial amount of material obtained by Plaintiffs through discovery and currently remains under seal. *Id*. at ¶16.

The parties participated in two full-day mediation sessions during the litigation. The first was in August 2017 and the second in February 2019. *Id*. at ¶¶24, 25. A tentative agreement to settle the action was not reached until September 2019 following a series of private conversations with a mediator that resulted in the acceptance of a "mediator's recommendation" to settle the matter for $15,500,000. *Id*. at ¶27. The parties reached this agreement after substantially completing all document discovery, deposing both Plaintiffs in connection with the pending motion for class certification, and just days before beginning a two-month long deposition schedule consisting of twelve depositions from Defendants and various defense witnesses. *Id*. at ¶¶10, 21.

## III.  THE PROPOSED TERMS OF SETTLEMENT.

### A.   The Class Definition

The Settlement Class is defined as all persons and entities that purchased or otherwise acquired shares of the publicly traded common stock of RESI during the Class Period, and were allegedly damaged by those purchases or acquisitions and any corrective disclosures. Excluded from the Settlement Class are: (i) Defendants; (ii) the officers and directors of RESI; (iii) members of their immediate families; and (iv) their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest. Also excluded from the Settlement Class are any Person(s) that timely and validly seek exclusion from the Settlement Class.

### B.   Monetary Consideration and Plan of Allocation

Plaintiffs are securing a total benefit for the Class of $15,500,000 to be paid by or on behalf of Defendants. The Plan of Allocation is based on the Third Amended Complaint. It provides compensation to those Class Members that sustained losses in response to the decline in the price of RESI's common stock that occurred on the following dates: February 20, 2014, February 26, 2014, October 21, 2014, November 4, 2014, November 12, 2014, and December 12, 2014. All

Class Members will receive the same distribution depending on the number of shares of RESI's common stock held on these days. The Plan of Allocation will be applied uniformly to all Class Members that submit valid and timely claims. The Plan of Allocation is described in full in the Notice. Apton Decl. at ¶¶38-39; *see also* Stipulation at Exhibit A-1.

### C.    Release Provisions

In exchange for the monetary consideration described above, Plaintiffs are releasing Defendants (and other Defendants' Releasees) from all claims arising from RESI's common stock. Specifically, the Stipulation defines the term "Released Plaintiffs' Claims" as follows:

> any and all claims, debts, disputes, demands, rights, actions or causes of action, liabilities, damages, losses, obligations, sums of money due, judgments, suits, amounts, matters, issues, and charges of every nature and description, including both known claims and Unknown Claims, whether arising under federal, state, common, or foreign law or any other law, rule, or regulation, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, foreseen or unforeseen, whether class and/or individual in nature, that Plaintiffs or any other member of the Settlement Class: (a) asserted in the Third Amended Complaint or any of the previous complaints filed in this Action, or (b) could have asserted, or in the future can or might assert in the Action or in any other action or in any other forum that relate to, arise out of, or are based upon the allegations, transactions, facts, events, acts, matters or occurrences, disclosures or nondisclosures, representations or omissions involved, set forth, or referred to in the Third Amended Complaint or any of the previous complaints filed in the Action and that relate to the purchase or acquisition of RESI common stock during the Class Period, or that otherwise would have been barred by *res judicata* had the Action been litigated to a final judgment.  Released Plaintiffs' Claims include all rights of appeal from any prior decision of the Court in the Action.

## IV.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE.

### A.    The Settlement Approval Process

Rule 23(e) provides a two-step process for approving class action settlements.[2] First, if a proposed settlement would bind class members, then the court should evaluate the proposed

---

[2] Plaintiffs' argument in this section takes into account the amendments to Rule 23, effective December 1, 2018, as well as the *Guidance on new Rule 23 class action settlement provisions,* 102 JUDICATURE, no. 3, Winter 2018, at 15-21.

settlement to determine whether giving notice to class members would be justified. FED. R. CIV. P. 23(e)(1). Second, once notice is given, the court should only approve the proposed settlement upon a finding that it is fair, reasonable, and adequate. FED. R. CIV. P. 23(e)(2).

Under Rule 23(e)(1), notice to class members should be directed if, based upon the parties' showing, it appears likely that the court will be able to approve the settlement under Rule 23(e)(2) and certify the class for the purposes of settlement. In the context of determining whether approval is likely to occur, Rule 23(e)(2) instructs the court to consider whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." "An initial 'presumption of fairness for the settlement is established if the court finds that: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n. 18 (3d Cir. 2001); *see also In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir. 2016).

**B.    The Proposed Settlement Meets the Requirements for Preliminary Approval under Rule 23(e)(2).**

**1.    Plaintiffs and Levi & Korsinsky Adequately Represented the Class.**

This was a difficult case to litigate from start to finish. Factually, Plaintiffs were faced with the immediate issue of obtaining evidence to substantiate their theory of liability without the benefit of discovery and the reality that any favorable documents were non-public and under the control of Defendants. To overcome this obstacle, Plaintiffs engaged in a comprehensive investigation to support their claims against Defendants. Apton Decl. at ¶4. These efforts ultimately resulted in the filing of the Amended Complaint that survived Defendants' motion to dismiss. *Id.* at ¶8.

The litigation that unfolded from that point was extensive. The parties engaged in several rounds of motions to dismiss and related motions for reconsideration and leave to certify an

interlocutory appeal. *Id.* at ¶¶14-22. Document discovery included more than 600,000 pages. *Id.* at ¶10. But for Levi & Korsinsky's diligence and commitment to the litigation, Plaintiffs would never have been able to revive the action following the Court's dismissal of the Second Amended Complaint. The discovery material included by Plaintiffs in the Third Amended Complaint persuaded the Court to allow the case to continue in spite of the Third Circuit's holding in *City of Cambridge*. *Id.* at ¶16. Moreover, but for Plaintiffs' presentation of their case in the Third Amended Complaint, they would not have been able to secure the Settlement that is currently before the Court. Their efforts and the result they generated prove that Plaintiffs and Levi & Korsinsky adequately represented the Class. This factor weighs in favor of granting preliminary approval and directing notice under Rule 23(e).

### 2.    The Proposal Was Negotiated at Arm's Length.

The parties reached the proposed Settlement after three attempts at mediation and only by way of a "mediator's recommendation" several weeks before the fact discovery deadline. These negotiations only took place and were finalized after Lead Counsel conducted a substantial review of the file and were able to present Plaintiffs' arguments in support of their theory of liability and damages. The history and context of these negotiations strongly supports the conclusion that the parties negotiated at arm's length. *See also* Manual for Complex Litigation, Third, § 30.42 (West 1995)) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."). This fact further supports the motion for preliminary approval and directing notice to the Class. *See*, *e.g.*, *Alves v. Main*, No. CIV.A. 01-789 DMC, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012), *aff'd*, 559 F. App'x 151 (3d Cir. 2014) ("courts in this Circuit traditionally 'attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class.'"); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 543 (D.N.J. 1997) *aff'd*, 148 F.3d 283 (3d Cir. 1998) ("[T]he Court credits the judgment of Plaintiffs' Counsel, all of whom are active, respected, and accomplished in this type of litigation."); *see also Riedel v. Acqua Ancien Bath New York LLC*, 14 Civ. 7238 (JCF), 2016 WL 3144375, at *7 (S.D.N.Y May

19, 2016) (document exchange reflects ability of counsel to evaluate strengths and weaknesses of claims).

### 3. The Relief Provided for the Class Is Adequate.

Rule 23(e) identifies four factors for the court to consider when determining whether the relief provided under a proposed settlement is adequate: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). The proposed Settlement meets these criteria and is therefore adequate:

#### (a)  The costs, risks, and delay of trial and appeal.

A settlement is favored where "continuing litigation through trial would have required additional discovery, extensive pretrial motions addressing complex factual and legal questions and ultimately a complicated, lengthy trial." *In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 536 (3d Cir. 2004). Courts have noted that "[s]ecurities fraud class actions are notably complex, lengthy, and expensive cases to litigate." *In re Par Pharm. Sec. Litig.*, No. 06 Civ 3226, 2013 WL 3930091, at *4 (D.N.J. July 29, 2013). As discussed below, Plaintiffs would have had to overcome numerous hurdles to achieve a litigated verdict against Defendants. Even assuming that the claims survived a motion for summary judgment, a jury trial would have required a substantial amount of factual and expert testimony. *See, e.g., In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 332 (E.D.N.Y. 2010) ("The proof on many disputed issues – which involve complex financial concepts – would likely have included a battle of experts, leaving the trier of fact with difficult questions to resolve."); *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001) ("In such a battle, Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Defendants."). Whatever the outcome at trial, it was virtually certain that an appeal would have been taken. All of the foregoing would have posed considerable expense to the parties, and would have delayed any potential recovery for several years, if one was even achieved.

Here, Plaintiffs faced particular and significant risks.  First, Plaintiffs needed to establish "loss causation" as an element of their securities fraud claims. This required Plaintiffs to show that Defendants' alleged misrepresentations caused damages to Plaintiffs. During the course of the litigation, Plaintiffs and Defendants argued over whether this could be done by relying on statements regarding non-parties that, as alleged by Plaintiffs, revealed certain information showing that Defendants' prior statements had been false. Specifically, Plaintiffs argued that they sustained damages as a result of the fraud when news about Ocwen's regulatory violations was revealed to the market, as this showed that Ocwen was not as effective in terms of servicing RESI's loans as Defendants claimed. Defendants, meanwhile, argued that news about Ocwen that did not mention anything about RESI could not have caused a decline in the price of RESI's stock as a matter of law. The outcome of this issue would have severely impacted Plaintiffs' ability to recover a substantial amount of their claimed damaged and, therefore, presented significant risk in terms of continuing the litigation. Apton Decl. at ¶34.

Plaintiffs faced another significant risk. Defendants vehemently opposed all accusations of wrongdoing concerning Mr. Erbey's adherence to RESI's related-party transaction policy. In particular, Plaintiffs argued that Defendants misrepresented the company's policies by claiming that Mr. Erbey "recused" himself from all negotiations and approvals of RESI's transactions with related-parties. Whether and to what extent Mr. Erbey followed these policies would have been heavily contested at trial. Had Defendants succeeded on this issue, Plaintiffs' theory of liability would have been significantly hampered. Consequently, this presented another substantial risk for Plaintiffs in the litigation. *Id.* at ¶35.

Plaintiffs believe that this is a favorable outcome for the class as it secures an immediate benefit in light of the expected difficulties in proving liability based on the discovery reviewed to date. The "fact that [defendants] could afford to pay more does not mean that [they are] obligated to pay any more than what the [] class members are entitled to under the theories of liability that existed at the time the settlement was reached." *Warfarin*, 391 F.3d at 538; see *also In re Schering-Plough Corp. Sec. Litig.*, No. 01 Civ. 0829, 2009 WL 5218066, at *5 (D.N.J. Dec. 31, 2009)

("pushing for more in the face of risks and delay would not be in the interests of the class"). Here, Plaintiffs respectfully submit that any arguments that Defendants could afford to pay more should not be viewed with much significance in light of the other factors supporting approval of the Settlement. Thus, whereas here, there is a real and substantial risk that Plaintiffs would not prevail on the merits, a recovery is fair and reasonable to the class. *See Alves,* 2012 WL 6043272, at *21 (finding settlement approval was warranted as the recovery provides immediate benefits and "continued litigation involves considerable risk that the Plaintiffs would lose the merits of the case").

        (b)    <u>The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims.</u>

Plaintiffs retained A.B. Data, Ltd. ("A.B. Data") to serve as the Claims Administrator. A.B. Data has been in the claims administration business for 20 years. *See* Declaration of Steven Straub, dated October 3, 2019, ¶3. In total, they have been involved in a number of significant settlements responsible for disbursing millions of dollars to shareholder claimants. *Id*. at ¶3.

A.B. Data distributes funds in accordance with the following process. Notice is provided to potential class member by mailing notice to a company's shareholders of record, including recipients consisting of brokers and various investment advisors as a standard operating procedure. *Id*. at ¶4. These recipients manage accounts on behalf of thousands of retail investors who then forward the notice to potential class members. *Id*. at ¶4. A.B. Data also provides notice via an electronic press release through a service. *Id*. at ¶5.

Class members then respond to the notice by submitting completed claim forms. The Claims Administrator receives these claims forms either by mail or electronically and, once the claims deadline passes, begins to vet each claim. The Claims Administrator reviews the claims to make sure they are authorized, *i.e.*, validly submitted in accordance with the class definition, completed correctly, properly signed, and include all necessary supporting documentation. Claimants who submit deficient claims are then notified and given an opportunity to cure the

deficiency. *Id*. at ¶¶6-8. Once the claims have been vetted, the Claims Administrator will calculate the *pro rata* distribution from the settlement fund and distribute the funds via check after court approval. Payees are usually given 90 or 180 days to negotiate the checks. Payees who do not negotiate their checks in that period of time are given an additional opportunity to receive their distribution, either in the form of a new check or by wire if feasible. *Id*. at ¶10.

A.B. Data as well as almost all securities claims administrators routinely follows the aforementioned process. *Id*. at ¶11. A.B. Data will be able to administer the settlement fund in this case without issue.

(c)   <u>The proposed award of attorney's fees, including timing of payment.</u>

Lead Counsel intends to seek an award of attorneys' fees equal to one-third of the Settlement Fund. The Supreme Court has recognized that an appropriate court-awarded fee is intended to approximate what counsel would receive if they were bargaining for the services in the marketplace. *See Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989). If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 33% of the recovery. *See Blum v. Stenson*, 465 U.S. 886, 903-04 (1984) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.") (Brennan, J., concurring). Accordingly, the requested fee will be equal to the percentage fee awards granted in many other comparable securities class actions within the Third Circuit.[3]

Lead Counsel respectfully submits that at this stage of the approval proceedings, the fact that the intended fee request will be in line with Third Circuit precedent supports Plaintiffs' request

---

[3] *See, e.g., See In re Ins. Brokerage Antitrust Litig.,* 297 F.R.D. 136, 155 (D.N.J. 2013) ("Courts within the Third Circuit often award fees of 25% to 33% of the recovery."); *Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.,* No. 03- CV-4372 (DMC), 2009 WL 4730185, at *8 (D.N.J. 2009) (same); *Milliron v. T-Mobile USA, Inc.,* No. 08-4149, 2009 WL 3345762 (D.N.J. Sept. 14, 2009) (awarding 33% of settlement); *In re Schering-Plough Corp. ENHANCE ERISA Litig.,* No. 08-1432 (DMC) (JAD), 2012 WL 1964451, at *6-7 (D.N.J. May 31, 2012) (awarding 33.3% of settlement); *Ins. Brokerage Antitrust Litig.,* 297 F.R.D. at 154-56 (awarding 33% of settlement).

for preliminary approval. When Lead Counsel formally moves for an award of attorneys' fees, it will submit additional evidence in support of its request.

(d)     Any agreement required to be identified under Rule 23(e)(3).

Aside from the Stipulation, the parties have entered into the Supplemental Agreement. The Supplemental Agreement, as described in the Stipulation, provides Defendants with the right to terminate the Settlement if a certain number of Class Members (or certain percentage of damaged ADRs) exceeds a threshold. *See* Stipulation at ¶52. The Supplemental Agreement is "confidential" as is customarily the case. *See Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 150292, at *23 (N.D. Cal. Sep. 4, 2018) (allowing confidential filing of supplemental agreement in order to "'avoid the risk that one or more shareholders might use this knowledge to insist on a higher payout for themselves by threatening to break up the Settlement.'").

**4.     The Settlement Treats Class Members Equitably.**

The Settlement does, in fact, treat Class Members equitably. This is because the proposed Plan of Allocation treats all claimants uniformly. "An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005) (citation omitted). As described in the Notice (Stipulation, Exhibit A-1), the Plan of Allocation has a rational basis and was formulated by Lead Counsel ensuring its fairness and reliability. *See In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 0165, 2007 WL 4115809, at *13 (S.D.N.Y. Nov. 7, 2007); *In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007) (granting final approval of settlement as "The Plan of Allocation is rational and consistent with Lead Plaintiffs' theory of the case."). Under the proposed Plan of Allocation, each Authorized Claimant will receive a *pro rata* share of the Net Settlement Amount, with that share to be determined by the ratio that the claimant's allowed claim bears to the total allowed claims of all claimants. *See* Apton Decl. at ¶¶38-39. The Plan of Allocation is based upon the Third Amended Complaint's premise that Settlement Class Members sustained damages by purchasing RESI common stock at artificially inflated prices and seeks to compensate them in accordance with the

devaluation that RESI common stock experienced when the alleged corrective disclosures entered the public sphere. *Id*. The Plan of Allocation relies on the corrective disclosure listed in the Third Amended Complaint, which is common in securities class actions. *Datatec Sys.,* 2007 WL 4225828, at *5.

The Plan of Allocation is substantially similar to other plans of allocation that have been approved and successfully implemented in other securities class action settlements, including within this Circuit. *See In re Ocean Power Techs., Inc.*, No. 3:14-CV-3799, 2016 U.S. Dist. LEXIS 158222, at *73 (D.N.J. Nov. 15, 2016) ("pro rata distributions are consistently upheld, and there is no requirement that a plan of allocation 'differentiat[e] within a class based on the strength or weakness of the theories of recovery'") (quoting *Sullivan v. DB Invs., Inc.,* 667 F.3d 273, 328 (3d Cir. 2011)); *see also In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) (deeming plan of allocation where "claimants are to be reimbursed on a *pro rata* basis for their recognized losses based largely on when they bought and sold their shares of [company] stock" as "even handed"). In assessing a proposed plan of allocation, the Court may give great weight to the opinion of informed counsel. *See, e.g.*, *Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 175 (E.D.N.Y. 2012) ("In determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel. That is, 'as a general rule, the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information.'"). Accordingly, given Lead Counsel's opinion concerning the Plan of Allocation, this factor weighs in favor of granting preliminary approval.

## V. PROVISIONAL CERTIFICATION OF THE SETTLEMENT UNDER RULE 23 IS APPROPRIATE.

As instructed by Rule 23(e), notice to class members should be directed if it appears likely that the court will be able to certify the class for the purposes of settlement. FED. R. CIV. P. 23(e). Conditional certification of a class for settlement purposes are allowable under Rule 23. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 794 (3d Cir. 1995). Before

a class may be certified, the following requirements of Rule 23(a) must be satisfied: (a) the class is so numerous that joinder of all class members is impracticable; (b) there are questions of law or fact common to the class; (c) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (d) the representative parties will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23. For the reasons stated below, certification for settlement purposes would be appropriate and, therefore, the Court should proceed with authorizing notice.

### A.      The Class Members Are So Numerous that Joinder Is Impracticable.

Rule 23(a)(1) requires that a class action must be advanced on behalf of a number of individuals so large that the joinder of all members is impractical. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). "[N]umerosity is presumed at a level of 40 members . . . ." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). While the precise number of Class Members is unknown, the number certainly exceeds any number considered practical for joinder. As alleged, RESI's common stock was actively traded on the New York Stock Exchange. During the Class Period, millions of shares were being actively traded. Indeed, courts routinely hold that Rule 23(a)'s numerosity requirement is satisfied under similar facts. *See In re DVI Inc. Sec. Litig.,* 249 F.R.D. 196, 200 (E.D. Pa. 2008*), aff'd sub nom. In re DVI, Inc. Sec. Litig.,* 639 F.3d 623 (3d Cir. 2011) (finding numerosity where stock traded on NYSE).

### B.      Common Questions of Law or Fact Exist.

In order to maintain a class action, there must be "questions of law or fact common to the class . . . ." Fed. R. Civ. P. 23(a)(2) (emphasis added). Rule 23(a)(2) merely requires that a plaintiff demonstrate common questions of law or fact that are susceptible to class-wide proof. 2 W. Rubenstein, Newberg on Class Actions § 4:50, 196-97 (5th ed. 2012). It is not necessary that all facts and legal questions be identical – commonality will be demonstrated where the named plaintiff demonstrates just one common question. *Id.* (citations omitted).

This case presents numerous common questions of both law and fact for Settlement purposes, which include: (i) whether the federal securities laws were violated by Defendants' acts;

(ii) whether Defendants made material misrepresentations and omissions concerning RESI's operations; (iii) whether Defendants acted with the requisite state of mind in allegedly misrepresenting or failing to disclose material facts; (iv) whether the alleged misrepresentations and omissions caused artificial inflation of the market price of RESI's common stock, and if so, how much; and (v) whether the Settlement Class Members have sustained damages and, if so, the appropriate measure thereof.

### C. **Plaintiffs' Claims are Typical of Those of the Class.**

Rule 23(a)(3) requires that the claims of the named plaintiff are typical of the class's claims. The heart of the inquiry is whether the representative's claims and the class claims are interrelated so that class treatment is economical. *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147 (1982). Here, Plaintiffs' claims are similar to the claims of the other Settlement Class Members for Settlement purposes. Defendants' alleged course of conduct uniformly affected all Settlement Class Members, as they each allegedly suffered economic injury when the truth about the company's misstatements was revealed. Thus, the typicality requirement of Rule 23(a)(3) is met.

### D. **Plaintiffs Are Adequate Representatives of the Class.**

The purpose of the adequacy requirement is to "uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997). The adequacy inquiry also tests the qualifications of counsel to represent a class. *See Viropharma*, 2016 WL 312108, at *7.

There are no apparent conflicts of interest between Plaintiffs and the absent Class Members for Settlement purposes. Indeed, Plaintiffs have been committed to the vigorous prosecution of this action from the outset and has reached a resolution that they believe is in the best interests of the Class. Plaintiffs have shown that they are more than an adequate representative by, among other things producing documents to Defendants, attending depositions, reviewing a multitude of legal filings in the action, and retaining and overseeing experienced counsel throughout the litigation. *See* Declaration of Lei Shi; Declaration of Ashley Saunders; Apton Decl. at Exhibit C (firm resume showing experience of Levi & Korsinsky in area of securities litigation).

**E.      The Requirements of Rule 23(b)(3) Are Also Satisfied.**

The class must satisfy the requirements of Rule 23(b)(1), (2), or (3). In this case, Plaintiffs and Defendants have agreed to request conditional certification under Rule 23(b)(3), "the customary vehicle for damage actions." *In re Community Bank of Northern Virginia*, 418 F.3d 277, 302 (3d Cir. 2005). Rule 23(b)(3) requires that Plaintiffs show that common questions of law and fact predominate over individual inquiries, and that resolution of the dispute via a class action is a superior method of adjudication. Rule 23(b)(3)'s predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 594 (1997). This case meets these requirements for settlement purposes.

**1.      Common Legal and Factual Question Predominate.**

"Predominance is a test readily met in certain cases alleging . . . securities fraud . . . ." *Amchem*, 521 U.S. at 625. In this securities action, Defendants' alleged liability arises from their conduct with respect to statements made about RESI's operations. Whether Defendants' publicly disseminated releases and statements during the Class Period omitted and/or misrepresented material facts and the Defendants' scienter predominate over any individual issue that theoretically might arise for Settlement purposes. *See Viropharma*, 2016 WL 312108, at *7 (finding common questions "dominate the Class, including whether Defendants' statements to the investing public during the Class Period caused the price of ViroPharma's securities during the Class Period to artificially inflate.").

**2.      A Class Action is the Superior Means to Adjudicate Plaintiffs' and Class Members' Claims.**

The second prong of Rule 23(b)(3) is essentially satisfied by the proposed Settlement itself. As explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems for the proposal is that there be no trial." 521 U.S. at 620 (citing Fed. R. Civ. P. 23(b)(3)(D)). Thus, any manageability problems that may have existed here—and Plaintiffs know

16

of none—are eliminated by the Settlement. *See In re ViroPharma Inc. Sec. Litig.*, No. 12-2714, 2016 U.S. Dist. LEXIS 8626, at *23 (E.D. Pa. Jan. 25, 2016) (finding class action superior as all class members were "complaining of the same behavior by Defendants" and "[t]he alternative would produce individual suits throughout the country, redundantly wasting judicial resources to litigate the same claims over and over).

## VI.   THE PROPOSED NATURE AND METHOD OF CLASS NOTICE ARE CONSTITUTIONALLY SOUND AND APPROPRIATE.

Preliminary approval of the proposed Settlement permits notice to be given to the Settlement Class Members of a hearing on final settlement approval, at which they and the settling parties may be heard with respect to final approval. *See Manual for Complex Litigation*, Third, § 23.14 (West ed. 1995). Here, the parties propose that notice be given by U.S. mail. *See* Stipulation at Exhibit A, ¶8. In addition, the Stipulation provides for publication of a summary notice, which will be published one time over a national business newswire and once in *Investor's Business Daily*. *See id.* at ¶11.

The proposed form of mailed notice (Exhibit A-1 to the Stipulation), provides the following details of the Stipulation to prospective Settlement Class Members in a fair, concise and neutral way: (1) the existence of and their rights with respect to the class action, including the requirement for timely opting out of the Class; and (2) the Settlement with Defendants and their rights with respect to the Settlement. The proposed form of Summary Notice (Exhibit A-3 to the Stipulation), provides essential information about the litigation and the Settlement, including an address for potential class members to write in order to obtain the full long form of notice.

The means and forms of notice proposed here constitute valid and sufficient notice to the Class, the best notice practicable under the circumstances, and comply fully with the requirements of the Private Securities Litigation Reform Act of 1995, Rule 23 and due process. *See e.g.*, *Schering-Plough*, 2009 WL 5218066, at *1, 6 (finding that a settlement notice with a mailing to all class members who could be identified with reasonable effort and publication of a summary notice and over the *PR Newswire*, satisfied the requirements of Rule 23 and due process).

## VII.    PROPOSED SCHEDULE

Plaintiffs respectfully request the Court to schedule the dates set forth below and enter them in the [Proposed] Preliminary Approval Order, including:

| | |
|---|---|
| Last day to complete mailing of Notices and Claim Forms. | At least 60 days before deadline for objections |
| Last day for filing and serving papers in support of final approval of the proposed Settlement, and the Fee and Expense Application. | At least 42 days before Fairness Hearing |
| Last day for Settlement Class Members to submit comments in support of, or in opposition to, the proposed Settlement, and the applications for Fee and Expense Awards. | At least 35 days before Fairness Hearing |
| Last day for potential Settlement Class Members to request exclusion from the Class. | At least 35 days before Fairness Hearing |
| Last day for filing and serving papers in response to objections to the proposed Settlement, and the Fee and Expense Application. | At least 14 days before Fairness Hearing |
| Fairness Hearing | At least 110 days following Preliminary Approval Date |

## VIII.   CONCLUSION

The proposed Settlement is presumptively fair and presents no obvious deficiencies. Accordingly, the Court should grant preliminary approval of the proposed Settlement and enter an order substantially in the form of the accompanying [Proposed] Preliminary Approval Order.

Dated:  October 8, 2019                    Respectfully submitted,

**K.A. Rames, P.C.**

s/ Kevin A. Rames
Kevin A. Rames (VI Bar No. 193)
Suite 3, 2111 Company Street
Christiansted, St. Croix, U.S.V.I. 00820
Tel: (340) 773-7284
Fax: (340) 773-7282
Email: kevin.rames@rameslaw.com

*Liaison Counsel for Class*

**LEVI & KORSINSKY, LLP**
Nicholas I. Porritt (admitted *pro hac vice*)
Adam M. Apton (admitted *pro hac vice*)
1101 30th Street NW, Suite 115
Washington, D.C. 20007
T: (202) 524-4290
F: (202) 333-2121
Email: nporritt@zlk.com
Email: aapton@zlk.com

*Attorneys for Plaintiffs*
*and Lead Counsel for the Class*