**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| ERIC MARTIN, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br>v.<br>ALTISOURCE RESIDENTIAL CORPORATION, WILLIAM C. ERBEY, ASHISH PANDEY, KENNETH D. NAJOUR, ROBIN N. LOWE, AND RACHEL M. RIDLEY,<br><br>                    Defendants. | Civ. No.: 1:15-cv-00024-AET-QWC<br><br><br>CLASS ACTION |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR: (I) AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES; AND (II) INCENTIVE AWARDS TO PLAINTIFFS**

Kevin A. Rames
VI Bar No. 193
K.A. RAMES, P.C.
Suite 3, 2111 Company Street
Christiansted, St. Croix, U.S.V.I. 00820
Tel: (340) 773-7284
Fax: (340) 773-7282
Email: kevin.rames@rameslaw.com

*Attorneys for Plaintiffs*

Nicholas I. Porritt (admitted *pro hac vice*)
Adam M. Apton (admitted *pro hac vice*)
LEVI & KORSINSKY, LLP
1101 30th Street NW, Suite 115
Washington, D.C. 20007
T: (202) 524-4290
F: (202) 333-2121
Email: nporritt@zlk.com
Email: aapton@zlk.com

# **TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................................1

II.   ARGUMENT ......................................................................................................2

      A.    Lead Counsel Is Entitled to An Award of Attorneys' Fees. ......................2

      B.    The Requested Attorney's Fees Are Reasonable under the Percentage-Of-
            The-Fund Method. .....................................................................................3

      C.    The Requested Attorneys' Fees Are Reasonable Under the Lodestar
            Cross-Check. ..............................................................................................6

      D.    Other Factors Considered by Courts in the Third Circuit Confirm that the
            Requested Fee is Fair and Reasonable. ......................................................7

      E.    Lead Counsel's Litigation Expenses Are Reasonable and Should Be
            Approved for Reimbursement. ..................................................................16

      F.    Plaintiffs Should Be Awarded Incentive Awards. .................................16

III.  CONCLUSION ................................................................................................17

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abrams v. Lightolier, Inc.*,
    50 F.3d 1204 (3d Cir. 1995) ................................................................ 16

*Anixter v. Home-Stake Prod. Co.*,
    77 F.3d 1215 (10th Cir. 1996) .............................................................. 12

*In re Apple Comput. Sec. Litig.*,
    No. C-84-20148, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ................. 12

*In re AremisSoft Corp. Sec. Litig.*,
    210 F.R.D. 109 (D.N.J. 2002) ................................................................ 6

*In re AT&T Corp. Sec. Litig.*,
    455 F.3d 160 (3d Cir. 2006) ........................................................ 4, 6, 7, 14

*Backman v. Polaroid Corp.*,
    910 F.2d 10 (1st Cir. 1990) ................................................................... 12

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
    472 U.S. 299 (1985) ............................................................................... 3

*Becher v. Long Island Lighting Co.*,
    64 F.Supp.2d 174 (E.D.N.Y.1999) .......................................................... 5

*Bentley v. Legent Corp.*,
    849 F. Supp. 429 (E.D. Va. 1994) ......................................................... 12

*In re Blech Sec. Litig.*,
    No. 94 CIV. 7696(RWS), 2002 WL 31720381 (S.D.N.Y. Dec.4, 2002) ............ 5

*Blum v. Stenson*,
    465 U.S. 886 (1984) .......................................................................... 3, 14

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ............................................................................... 2

*In re Cendant Corp. PRIDES Litig.*,
    243 F.3d 722 (3d Cir. 2001) ................................................................... 4

*In re Cendant Corp. Sec. Litig.*,
    404 F.3d 173 (3d Cir. 2005) ................................................................ 2, 4

*In re Cigna Corp. Sec. Litig.*,
    No. 02-8088, 2007 WL 2071898 (E.D. Pa. July 13, 2007) ...................... 14

*In re Datatec Sys., Inc. Sec. Litig.*,
    No. 04-CV-525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007) ............ 9, 15

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*,
    582 F.3d 524 (3d Cir. 2009) ............................................................... 2, 15

*Esslinger v. HSBC Bank Nev., N.A.*,
    No. 10-3213, 2012 WL 5866074 (E.D. Pa. Nov. 20, 2012) ................................................ 5

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
    No. MDL 12-2389, 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015)........................................ 5

*Fogarazzo v. Lehman Bros., Inc.*,
    No. 03-5194 (SAS), 2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) ........................................ 9

*Forsythe v. ESC Fund Mgmt. Co. (U.S.)*,
    No. CIV.A. 1091-VCL, 2012 WL 1655538 (Del. Ch. May 9, 2012)................................... 17

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ................................................................................................... 4

*In re Genta Sec. Litig.*,
    No. 04-2123 (JAG), 2008 WL 2229843 (D.N.J. May 28, 2008)........................................... 9

*Gunter v. Ridgewood Energy Corp.*,
    223 F.3d 190 (3d Cir. 2000) ......................................................................................... 3, 4, 7

*Hall v. AT&T Mobility LLC*,
    No. 07-5325 (JLL), 2010 WL 4053547 (D.N.J. Oct. 13, 2010) .................................... 15, 16

*Hayes v. Harmony Gold Mining Co.*,
    No. 08 Civ. 03653, 2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011) ......................................... 5

*Hensley v Eckerhart*,
    461 U.S. 424 (1983) ............................................................................................................. 8

*In re Ikon Office Sols., Inc., Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000).................................................................................... passim

*In re IMAX Sec. Litig.*,
    No. 06 CIV. 6128 NRB, 2012 WL 3133476 (S.D.N.Y. Aug.1, 2012)................................... 5

*In re Ins. Brokerage Antitrust Litig.*,
    297 F.R.D. 136 (D.N.J. 2013).......................................................................................... 4, 5

*In re JDS Uniphase Corp. Sec. Litig.*,
    No. CO2-1486 CW, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) .................................. 12

*Landy v. Amsterdam*,
    815 F.2d 925 (3d Cir. 1987) ............................................................................................... 12

*In re Linerboard Antitrust Litig.*,
    MDL 1261, 2004 WL 1221350 (E.D. Pa. June 2, 2004)....................................................... 8

*Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
    No. 03- CV-4372 (DMC), 2009 WL 4730185 (D.N.J. 2009) ......................................... 5, 11

*Mehling v. New York Life Ins. Co.*,
    248 F.R.D. 455 (E.D. Pa. 2008)........................................................................................... 5

*In re Merck & Co., Inc. Vytorin ERISA Litig.*,
  No. 08-CV-285, 2010 WL 547613 (D.N.J. Feb. 9, 2010) ................................... 11

*Milliron v. T-Mobile USA, Inc.*,
  No. 08-4149, 2009 WL 3345762 (D.N.J. Sept. 14, 2009) .................................... 5

*Missouri v. Jenkins*,
  491 U.S. 274 (1989) ...................................................................................... 3, 13

*In re Ocean Power Techs., Inc. Sec. Litig.*,
  No. 3:14-CV-3799, 2016 WL 6778218 (D.N.J. Nov. 15, 2016) .................................... 4, 14

*In re Par Pharm. Sec. Litig.*,
  No. 06-3226 (ES), 2013 WL 3930091 (D.N.J. July 29, 2013) ............................ 3, 5

*In re Processed Egg Prods. Antitrust Litig.*,
  No. 08-md-2002, 2012 WL 5467530 (E.D. Pa. Nov. 9, 2012) ........................... 15

*In re Prudential Inc. Co. Am. Sales Practice Litig. Agent Actions*,
  148 F.3d 283 (3rd Cir. 1998) .......................................................... 6, 7, 14, 15

*In re Rent-Way Sec. Litig.*,
  305 F. Supp. 2d 491 (W.D. Pa. 2003) ............................................................. 13

*In re Rite Aid Corp. Sec. Litig.*,
  146 F. Supp. 2d 706 (E.D. Pa. 2001) ............................................................... 6

*In re Rite Aid Corp. Sec. Litig.*,
  362 F. Supp. 2d 587 (E.D. Pa. 2005) ............................................................... 6

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005) .................................................................... 4, 6, 7

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ...................................................................... 12

*In re Safety Components, Inc. Sec. Litig.*,
  166 F. Supp. 2d 72 (D.N.J. 2001) ................................................................... 16

*In re Schering-Plough Corp. ENHANCE ERISA Litig.*,
  No. 08-1432 (DMC) (JAD), 2012 WL 1964451 (D.N.J. May 31, 2012) .................. 5, 6, 11

*Schuler v. Meds. Co.*,
  No. CV 14-1149 (CCC), 2016 WL 3457218 (D.N.J. June 24, 2016) ..................... 2

*Sullivan v. DB Invs.*,
  667 F.3d 273 (3d Cir. 2011) .................................................................... 3, 4, 6

*In re Suprema Specialties, Inc. Sec. Litig.*,
  No. 02 168 (WHW), 2008 WL 906254 (D.N.J. Mar. 31, 2008) ......................... 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ...................................................................................... 3, 17

*In re Vicuron Pharm., Inc. Sec. Litig.*,
    512 F. Supp. 2d 279 (E.D. Pa. 2007) ................................................................... 14

*In re Viropharma Inc. Sec. Litig.*,
    No. 12-2714, 2016 WL 312108 (E.D. Pa. Jan. 25, 2016) ................................. 8, 16

*W. Pa. Elec. Emps.' Pension Fund v. Alter*,
    No. 2:09-cv-04730 CMR, 2014 WL 12618202 (E.D. Pa. Aug. 4, 2014) .............. 5

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) ...................................................................... 10

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005) ................................................................... 4

**Statutes**

15 U.S.C. §78u-4(a) ................................................................................................. 4, 16

15 U.S.C. §77z-1(a) ..................................................................................................... 4

## I.    INTRODUCTION

After more than five years of litigation, Levi & Korsinsky, LLP ("Lead Counsel"), Court-appointed Lead Counsel for Lead Plaintiff Lei Shi and Plaintiff Ashley Saunders (collectively, "Plaintiffs"), and the Settlement Class have successfully negotiated a favorable settlement of this class action with Altisource Residential Corporation ("RESI"), Ashish Pandey, Kenneth D. Najour, Robin N. Lowe, Rachel M. Ridley, and William C. Erbey (together, "Defendants") in the amount of $15,500,000 in cash.[1] The proposed Settlement represents a very favorable recovery for the Settlement Class, especially when viewed in light of the risks and costs attendant to further, protracted litigation. Accordingly, Lead Counsel requests: (i) an award of attorneys' fees in the amount of one-third of the Settlement Fund; and (ii) payment of litigation expenses incurred in prosecuting the Action, in the amount of $250,035.47.

Throughout the Action, the stakes have been large, the risks substantial, and the battles hard-fought. The likelihood of succeeding, and then recovering, was uncertain. Lead Counsel nevertheless undertook this representation on a contingency basis, with no guarantee of success or recovery. Lead Counsel faced substantial risks establishing liability, defeating defenses, and proving the amount of damages. Plaintiffs and Lead Counsel succeeded, however, recovering $15,500,000 for the Settlement Class Members. This represents a recovery of almost 4.5% of Plaintiffs' estimate of total class-wide damages. This is an excellent result for a securities fraud class action settlement.

Proof of this is evident in the fact that similar cases of this size and complexity have settled for amounts equal to or less than the amount here (as a percentage of overall damages). Moreover, approximately 34,000 notices have been disseminated to the public detailing the terms of the Settlement and Lead Counsel's intent to seek a payment of one-third of the settlement fund in

---

[1] All capitalized terms not otherwise defined herein have the same meanings as set forth in the Stipulation and Agreement of Settlement, dated as of October 8, 2019 (ECF No. 217) (the "Stipulation" or the "Stip.").

attorneys' fees, and up to $275,000 in reimbursement of expenses. To date, there have been no objections to the Settlement or the requested payments.

Finally, in exchange for their commitment of time and effort to the Action, Lead Counsel requests that Plaintiffs Lei Shi and Ashley Saunders each receive an award of $11,429 and $5,250, respectively. Plaintiffs both participated actively during the litigation by, among other things, sitting for depositions at critical points in the litigation. Their involvement contributed to the successful resolution of this Action. Plaintiffs and Lead Counsel should be rewarded for their hard work and commitment to the Action. Accordingly, they respectfully request that their motion for attorneys' fees and expenses and an incentive award be granted in its entirety.

## II.   ARGUMENT

### A.   Lead Counsel Is Entitled to An Award of Attorneys' Fees.

The Supreme Court, and Circuit Courts across the country, has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 197 (3d Cir. 2005) ("attorneys whose efforts create, discover, increase, or preserve a [common] fund are entitled to compensation"); *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*, 582 F.3d 524, 540 (3d Cir. 2009).[2]

Courts within the Third Circuit have consistently adhered to these teachings.  *See, e.g., Schuler v. Meds. Co.*, No. CV 14-1149 (CCC), 2016 WL 3457218, at *8 (D.N.J. June 24, 2016) ("Under the common fund doctrine, 'a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees.'") (quoting *Diet Drugs*, 582 F.3d at 540); *In re Par Pharm. Sec. Litig.*, No. 06-3226 (ES), 2013 WL 3930091, at *9 (D.N.J. July 29,

---

[2] All internal quotations and citations are omitted unless otherwise noted.

2013); *In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 192 (E.D. Pa. 2000) ("[T]here is no doubt that attorneys may properly be given a portion of the settlement fund in recognition of the benefits they have bestowed on class members.").

Courts have emphasized that the award of attorneys' fees from a common fund serves to encourage skilled counsel to represent classes of persons who otherwise may not be able to retain counsel to represent them in complex and risky litigation. *See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000) (goal of percentage fee awards is to "ensur[e] that competent counsel continue to be willing to undertake risky, complex, and novel litigation").  Indeed, the Supreme Court has repeatedly recognized that private securities actions, such as the instant Action, are "an essential supplement to criminal prosecutions and civil enforcement actions," brought by the U.S. Securities and Exchange Commission ("SEC").  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provided "a most effective weapon in the enforcement' of the securities laws and are a necessary supplement to [SEC] action").

**B.      The Requested Attorney's Fees Are Reasonable under the Percentage-Of-The-Fund Method.**

The Supreme Court has recognized that an appropriate court-awarded fee is intended to approximate what counsel would receive if they were bargaining for the services in the marketplace. *See Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989). If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 33% of the recovery. *See Blum v. Stenson*, 465 U.S. 886, 903-04 (1984) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.") (Brennan, J., concurring). In the Third Circuit, the percentage-of-recovery method is "generally favored" in cases involving a settlement that creates a common fund.  *See Sullivan v. DB Invs.*, 667 F.3d 273, 330 (3d Cir. 2011) (favoring percentage of recovery method "because it allows courts to award fees from the [common] fund in a manner that rewards counsel for success and penalizes it for failure"); *In re*

*AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005). The percentage-of-recovery method is almost universally preferred in common fund cases because it most closely aligns the interests of counsel and the class. *See Rite Aid*, 396 F.3d at 300; *In re Ocean Power Techs., Inc. Sec. Litig.*, No. 3:14-CV-3799, 2016 WL 6778218, at *24 (D.N.J. Nov. 15, 2016).

The Third Circuit has "several times reaffirmed that the application of a percentage-of recovery method is appropriate in common-fund cases." *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 734 (3d Cir. 2001) (citing *Gunter*, 223 F.3d at 195 n.1). While the Third Circuit recommends that the percentage award be "cross-checked" against the lodestar method to ensure its reasonableness, *Sullivan*, 667 F.3d at 330, "[t]he lodestar cross-check, while useful, should not displace a district court's primary reliance on the percentage-of-recovery method." *AT&T*, 455 F.3d at 164.

Additionally, the PSLRA, which governs this Action, specifies that "[t]otal attorneys' fees and expenses awarded . . . not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class," thus also supporting the use of the percentage-of recovery method. PSLRA, 15 U.S.C. §77z-1(a)(6) and §78u-4(a)(6) (emphasis added). Courts have concluded that, in using this language, Congress expressed a preference for the percentage method, rather than the lodestar method, in determining attorneys' fees in securities class actions. *See Cendant*, 404 F.3d at 188 n.7; *Rite Aid*, 396 F.3d at 300; *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 354-55 (S.D.N.Y. 2005).

The requested fee of one-third of the Settlement Fund is reasonable under the percentage-of-recovery method. While there is no general rule, courts in the Third Circuit have observed that fee awards generally range from 19% to 45% of the settlement fund. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995); *Ikon*, 194 F.R.D. at 194 ("Percentages awarded have varied considerably, but most fees appear to fall in the range of nineteen to forty-five percent."). Fees most commonly range from 25% to one-third of the recovery. *See In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 155 (D.N.J. 2013) ("Courts

within the Third Circuit often award fees of 25% to 33% of the recovery."); *Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, No. 03- CV-4372 (DMC), 2009 WL 4730185, at *8 (D.N.J. 2009) (same).

A review of attorneys' fees awarded in class actions with comparably sized settlements in the Third Circuit supports the reasonableness of the requested fee.  *See Milliron v. T-Mobile USA, Inc.,* No. 08-4149, 2009 WL 3345762 (D.N.J. Sept. 14, 2009) (awarding 33% of $13.5 million settlement); *In re Schering-Plough Corp. ENHANCE ERISA Litig.*, No. 08-1432 (DMC) (JAD), 2012 WL 1964451, at *6-7 (D.N.J. May 31, 2012) (awarding 33.3% of $12.25 million settlement); *Ins. Brokerage Antitrust Litig.*, 297 F.R.D. at 154-56 (awarding 33% of $10.5 million settlement); *Par Pharm.*, 2013 WL 3930091 at *11 (awarding 30% of $8.1 million settlement); *Esslinger v. HSBC Bank Nev., N.A.*, No. 10-3213, 2012 WL 5866074 at *14 (E.D. Pa. Nov. 20, 2012) ("a fee award of 30% of the [$23.5 million] settlement here is reasonable and in keeping with similar precedent"); *W. Pa. Elec. Emps.' Pension Fund v. Alter*, No. 2:09-cv-04730 CMR, 2014 WL 12618202, at *1 (E.D. Pa. Aug. 4, 2014) (awarding 30% of $13.25 million settlement); *Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455, 464-66 (E.D. Pa. 2008) (awarding 30% of $14 million settlement).[3]

---

[3] The requested fee is also well within the range of percentage fee awards that have been granted in comparable securities class actions in other Circuits. *See, e.g., In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. MDL 12-2389, 2015 WL 6971424, at *11 (S.D.N.Y. Nov. 9, 2015), *aff'd sub nom. In re Facebook, Inc.*, 674 F. App'x 37 (2d Cir. 2016) (awarding 33% of total Settlement); *In re IMAX Sec. Litig.*, No. 06 CIV. 6128 NRB, 2012 WL 3133476, at *7 (S.D.N.Y. Aug.1, 2012) (finding an award of 33% of a $12 million settlement reasonable); *Hayes v. Harmony Gold Mining Co.*, No. 08 Civ. 03653, 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2, 2011) (awarding 33.3% of $9 million settlement fund), *aff'd*, 509 F. App'x 21 (2d Cir. 2013) (unpubl.); *In re Blech Sec. Litig.*, No. 94 CIV. 7696(RWS), 2002 WL 31720381, at *1 (S.D.N.Y. Dec.4, 2002) (finding an award of 33–1/3% reasonable); *Becher v. Long Island Lighting Co.*, 64 F.Supp.2d 174, 182 (E.D.N.Y.1999) (citations omitted) (A fee award of one-third of the Settlement Fund "is well within the range accepted by courts in this circuit.").

C.     <u>**The Requested Attorneys' Fees Are Reasonable Under the Lodestar Cross-Check.**</u>

The Third Circuit recommends that district courts use counsel's lodestar as a "cross check" to determine whether the fee that would be awarded under the percentage approach is reasonable and to avoid a "windfall" to counsel. *See Sullivan*, 667 F.3d at 330; *AT&T*, 455 F.3d at 164.[4]

Here, Lead Counsel and Liaison Counsel devoted an aggregate total of 7,564.50, hours on the prosecution and resolution of this Action. Supplemental Declaration of Adam M. Apton ("Supp. Apton Decl."), ¶13; Declaration of Kevin A. Rames ("Rames Decl."), ¶6. Counsels' lodestar – which is derived by multiplying their hours spent on the litigation by each firm's current hourly rates for attorneys, paralegals and other professional support staff – is $3,819,992.75. *Id*. Accordingly, the requested one-third fee, which equates to $5,166,666.67 (plus interest on that amount at the same rate as earned by the Settlement Fund), represents a multiplier of 1.35 on counsels' lodestar.

This multiplier is within the parameters used within the Third Circuit and is additional evidence that the requested attorneys' fee is reasonable. Lodestar multipliers of one to four are often used in common fund cases. *In re Prudential Inc. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341(3rd Cir. 1998); *see also AT&T*, 455 F.3d at 172 (approving a 1.28 multiplier and noting the Third Circuit's prior "approv[al] of a lodestar multiplier of 2.99 in . . . a case [that] was neither legally nor factually complex"); *Schering-Plough*, 2012 WL 1964451, at *8 (awarding 1.6 multiplier); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 736 (E.D. Pa. 2001) and *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 589 (E.D. Pa. 2005) (awarding multiplier of between 4.5 and 8.5 on 2001 settlement and multiplier of 6.96 on the 2005 settlement); *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 135 (D.N.J. 2002) (awarding 4.3

---

[4] Under the full "lodestar method," a court multiplies the number of hours each timekeeper spent on the case by the hourly rate, then adjusts that lodestar figure by applying a multiplier to reflect such factors as the risk and contingent nature of the litigation, the result obtained and the quality of the attorneys' work. The multiplier is intended to "account for the contingent nature or risk involved in a particular case and the quality" of the work. *Rite Aid*, 396 F.3d at 305-06.

multiplier); *Ikon*, 194 F.R.D. at 195 (awarding 2.7 multiplier and noting that it was "well within the range of those awarded in similar cases").

Accordingly, the one-third fee request here is reasonable and would not provide counsel with a windfall.

### D. <u>Other Factors Considered by Courts in the Third Circuit Confirm that the Requested Fee is Fair and Reasonable.</u>

The Third Circuit has set forth the following criteria for courts to consider when reviewing a request for attorneys' fees in a common fund case:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the Class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Gunter*, 223 F.3d at 195, n.1.  The Third Circuit has also suggested three other factors that may be relevant to the Court's inquiry: (1) "the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations;" (2) "the percentage fee that would have been negotiated had the case been subject to a private [non-class] contingent fee agreement at the time counsel was retained;" and (3) any "innovative terms of settlement."  *AT&T*, 455 F.3d at 165 (citing *Prudential*, 148 F.3d at 338-40).

The fee award factors "'need not be applied in a formulaic way' because each case is different, 'and in certain cases, one factor may outweigh the rest.'"  *AT&T*, 455 F.3d at 165 (citing *Rite Aid*, 396 F.3d at 301).  Indeed in cases involving large settlement awards, district courts may give some of the *Gunter* factors less weight, and emphasize (1) the complexity and duration of the case and (2) awards in similar cases.  *Rite Aid*, 396 F.3d at 301.

An analysis of relevant factors further confirms that the fee requested here is fair and reasonable and should be approved.

1.     **The Size of the Common Fund Created and the Number of Persons Benefited Support Approval of the Fee Request.**

The result achieved is one of the primary factors to be considered in assessing the propriety of an attorneys' fee award. *Hensley v Eckerhart*, 461 U.S. 424, 436 (1983) ("the most critical factor is the degree of success obtained"); *In re Viropharma Inc. Sec. Litig.*, No. 12-2714, 2016 WL 312108, at *16 (E.D. Pa. Jan. 25, 2016).

Here, Lead Counsel, on behalf of Plaintiffs, have secured a Settlement that provides for a substantial and certain payment of $15,500,000. The Settlement is above the 4% median recovery for cases with damages ranging from $250 million to $499 million in 2018 securities cases. Furthermore, as detailed in the Declaration, Plaintiffs estimate maximum aggregate damages of approximately $350 million. Declaration of Adam M. Apton in Support of Unopposed Motion for Preliminary Approval of Settlement (Dkt. No. 218-2) ("Apton Decl."), ¶¶32. Measured against this yardstick, the Settlement recovers approximately 4.5% of maximum damages – a favorable recovery in light of the procedural posture of the case, Defendants' countervailing arguments, and the risk that continued litigation might result in a vastly smaller recovery or no recovery at all. *Id*. It is also important to note that the percentage of recovery falls directly in line with the other Ocwen-related settlements that have occurred to-date, which further supports the conclusion that Lead Counsel is deserving of the requested fee award. *Id*. at ¶33 (noting that *In re Ocwen Financial Corporation Securities Litigation* settled for 3.5% of total damages, *In re Altisource Portfolio Solutions, S.A. Securities Litigation* settled for 5.8% of total damages, and *In re Home Loan Servicing Solutions Securities Litigation* settled for 1.8% of total damages.)

The Settlement will also benefit a large number of investors. To date, the Claims Administrator has mailed approximately 34,000 Notice Packets to potential Settlement Class Members and their nominees. *See* Declaration of Steven Straub, ¶¶5, 8. Accordingly, while the deadline for submission of the Claim Forms is not until February 22, 2020 a large number of Settlement Class Members can be expected to benefit from the Settlement Fund. *See In re Linerboard Antitrust Litig.*, MDL 1261, 2004 WL 1221350, at *5 (E.D. Pa. June 2, 2004), order

amended by, MDL 1261, 2004 WL 1240775 (E.D. Pa. June 4, 2004) (size of benefitted population "is best estimated by the number of entities that were sent the notice describing the [Settlement]").

### 2.  The Absence of Objections to Date Supports Approval of the Fee Request.

The Notice, which was sent to approximately 34,000 potential Settlement Class Members and their nominees and disseminated over the internet, provided a summary of the terms of the Settlement and stated that Lead Counsel would apply for an award of attorneys' fees in an amount not to exceed one-third of the Settlement Fund.  *See* Declaration of Steven Straub, ¶¶5, 8 & Ex. A. The Notice also advised Settlement Class Members that they could object to Settlement or fee request and explained the procedure for doing so.  *See id*. at Ex. A.  While the deadline set by the Court for Settlement Class Members to object has not yet passed, to date, no objections have been received.[5]  Importantly, Plaintiffs Lei Shi and Ashley Saunders approve of Lead Counsel's requested fee. *See* Supplemental Declaration of Lei Shi, ¶4; Supplemental Declaration of Ashley Saunders, ¶4.

### 3.  The Complexity and Duration of the Litigation Support Approval of the Fee Request.

Securities litigation is regularly acknowledged to be particularly complex and expensive litigation, usually requiring expert testimony on multiple issues, including loss causation and damages.  *See, e.g., Fogarazzo v. Lehman Bros., Inc.*, No. 03-5194 (SAS), 2011 WL 671745, at *3 (S.D.N.Y. Feb. 23, 2011) ("securities actions are highly complex"); *In re Genta Sec. Litig.*, No. 04-2123 (JAG), 2008 WL 2229843, at *3 (D.N.J. May 28, 2008) ("This [securities fraud] action involves complex legal and factual issues, and pursuing them would be costly and expensive."); *In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 WL 4225828, at *3 (D.N.J. Nov. 28, 2007) ("[R]esolution of [accounting and damages issues] would likely require extensive and

---

[5] The deadline for submitting objections is January 9, 2020.  As provided in the Preliminary Approval Order, Plaintiffs and Lead Counsel will file reply papers no later than January 23, 2020 addressing any objections that may be received.

conceptually difficult expert economic analysis. . . . Trial on [scienter and loss causation] issues would be lengthy and costly to the parties.").

As discussed in detail in the Apton Decl., the Action alleged violations of the Securities and Exchange Act of 1934 ("Exchange Act"), raising a panoply of difficult legal and factual issues that required creativity and sophisticated analysis.  Apton Decl. ¶¶4-6.  Defendants filed serial motions to dismiss, even after discovery was well underway. *Id*. at ¶¶7-20. The material obtained by Plaintiffs in discovery was voluminous and required expert review in certain instances. *Id*. at ¶10. Plaintiffs believe that the case has merit and that evidence exists to establish Defendants' liability. However, this is a case with a complex fact pattern. Plaintiffs recognize that Defendants have denied the material allegations in the Complaint and that it strongly disputes the central premise of the Complaint. In view of these factors, without a settlement, Plaintiffs and the Settlement Class face a very real risk in this case that they could recover far less than the Settlement amount—or even nothing—without the Settlement. In addition, costly expert testimony concerning the materiality of Defendants' misstatements, loss causation, damages, and market efficiency would be crucial to Plaintiffs' case. In all events, protracted and highly complex further litigation without a reasonably predictable outcome would ensue if this case were not resolved at this time. *Id*. at ¶¶34-36 (discussing particular risks in litigation).

Had this litigation continued, Plaintiffs, through Lead Counsel, would have been required to conduct extensive factual document and deposition discovery and substantial expert discovery (including preparation of expert reports and expert depositions).  After the close of discovery, Defendants would undoubtedly have moved for summary judgment and would have vigorously challenged Plaintiffs' experts' testimony. Substantial time and expense would need to be expended in preparing the case for trial, filing and responding to *in limine* motions, and the trial itself would be extensive and uncertain.

Moreover, even if the jury returned a favorable verdict after trial, it is likely that any verdict would be the subject of numerous post-trial motions and a complex multi-year appellate process. Indeed, in complex securities cases, even a victory at the trial stage does not guarantee a successful outcome.  *See In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 747-48 (S.D.N.Y. 1985),

aff'd, 798 F.2d 35 (2d Cir. 1986) ("Even a victory at trial is not a guarantee of ultimate success . . . . An appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself.").

Considering the magnitude, expense, and complexity of this securities case – especially when compared against the significant and certain recovery achieved by the Settlement – Lead Counsel's fee request is reasonable.

**4.    The Risk of Non-Payment Supports Approval of the Fee Request.**

Lead Counsel undertook this Action on an entirely contingent fee basis, assuming a substantial risk that the litigation would yield no or potentially little recovery and leave them uncompensated for their investment of time, as well as for their substantial expenses. This Court and others have consistently recognized that this risk is an important factor favoring an award of attorneys' fees. *See, e.g., Schering-Plough*, 2012 WL 1964451, at *7 ("Courts routinely recognize that the risk created by undertaking an action on a contingency fee basis militates in favor of approval."); *In re Merck & Co., Inc. Vytorin ERISA Litig.*, No. 08-CV-285, 2010 WL 547613, at *11 (D.N.J. Feb. 9, 2010) (finding "[t]he risk of little to no recovery weighs in favor of an award of attorneys' fees" where counsel accepted the action on a contingent-fee basis); *Sealed Air*, 2009 WL 4730185, at *8  (same); *In re Suprema Specialties, Inc. Sec. Litig.*, No. 02 168 (WHW), 2008 WL 906254, at *11 (D.N.J. Mar. 31, 2008) (same).

In undertaking this responsibility, counsel were obligated to ensure that sufficient resources were dedicated to the prosecution of the Action, and that funds were available to compensate staff and to cover the considerable costs that a case such as this requires. With an average lag time of several years for cases of this type to conclude, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis. Indeed, Lead Counsel received no compensation during the course of this five-year litigation and advanced or incurred nearly $250,000 in expenses in prosecuting this Action for the benefit of the Settlement Class.

The risk of no recovery in complex cases of this type is real. Indeed, even if Plaintiffs had prevailed at trial on both liability and damages, no judgment would have been secure until after the rulings on the inevitable post-judgment motions and appeals became final – a process that

would likely take years.  Lead Counsel know from experience that despite the most vigorous and skillful efforts, a firm's success in contingent litigation, such as this, is not assured, and there are many class actions in which plaintiffs' counsel expended tens of thousands of hours and millions in expenses and received nothing for their efforts.[6]  Indeed, even judgments initially affirmed on appeal by an appellate panel are no assurance of a recovery.  *See, e.g., Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (after 11 years of litigation, and following a jury verdict for plaintiffs and an affirmance by a First Circuit panel, plaintiffs' claims were dismissed by an en banc decision and plaintiffs recovered nothing).

Because the fee in this matter was entirely contingent, the only certainty was that there would be no fee without a successful result, and that such a result would be realized only after considerable and difficult effort.  This strongly favors approval of the requested fee.

### 5.   The Time Devoted to this Case by Counsel Supports Approval of the Fee Request.

As discussed above and detailed in the Declaration Lead Counsel and Liaison Counsel have collectively devoted 7,564.50 hours, with a lodestar value of $3,819,992.75, to the prosecution and resolution of the Action.  *See* Supp. Apton Decl. at ¶13; Rames Decl. at ¶6.

Since the initiation of the Action, Lead Counsel have vigorously pursued the claims, conducting a thorough investigation relating to the claims, defenses, and underlying events and transactions that are the subject of the Action.  This process included reviewing and analyzing: (i) publicly available information, including SEC filings, press releases, news articles, and other

---

[6] For illustrative examples, *see, e.g., Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversal of jury verdict of $81 million against accounting firm after a 19-day trial); *Bentley v. Legent Corp.*, 849 F. Supp. 429 (E.D. Va. 1994), aff'd, 50 F.3d 6 (4th Cir. 1995) (directed verdict after plaintiffs' presentation of its case to the jury); *Landy v. Amsterdam*, 815 F.2d 925 (3d Cir. 1987) (directed verdict for defendants after five years of litigation); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict following two decades of litigation); *In re Apple Comput. Sec. Litig.*, No. C-84-20148, 1991 WL 238298, at *1-2 (N.D. Cal. Sept. 6, 1991) ($100 million jury verdict vacated on post-trial motions); *In re JDS Uniphase Corp. Sec. Litig.*, No. CO2-1486 CW, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (defense verdict after four weeks of trial)

public statements issued by or concerning the Company and the Defendants; (ii) analyst reports; (iii) pleadings filed in other pending litigations naming certain Defendants herein as defendants or nominal defendants; and (v) over 600,000 pages of documents. *See* Apton Decl. ¶¶4, 10.  Lead Counsel also: (i) researched and drafted three thorough and detailed amended complaints; (ii) fully briefed and successfully overcame, in part, Defendants' motion to dismiss; (iii) exchanged initial discovery disclosures with Defendants; and (iv) participated in thorough settlement negotiations, including a mediation session facilitated by a private mediator. *Id*. ¶¶5-27.

As noted above, Lead Counsel have expended devoted 7,564.50 hours, with a lodestar value of $3,819,992.75, to the prosecution and resolution of the Action. *See* Supp. Apton Decl. at ¶13; Rames Decl. at ¶6.[7] With respect to counsel's rates, Lead Counsel submits that they are comparable or less than those used by peer defense-side law firms litigating matters of similar magnitude. Lead Counsel's efforts for the benefit of the Settlement Class will continue, if the Court approves the Settlement. Lead Counsel will continue to work through the settlement administration process, assisting Class Members, and the distribution process, without seeking any additional compensation.

Lead Counsel respectfully submit that this Gunter factor weighs in favor of the requested attorneys' fee.

### 6.      The Requested Fee is within the Range of Fees Typically Awarded in Actions of this Nature.

As discussed above, the requested fee of one-third of the Settlement Fund is within the range of fees awarded in comparable cases, when considered as a percentage of the fund or on a lodestar basis.  Accordingly, this factor strongly supports approval of the requested fee.

---

[7] Current hourly rates were used, as permitted by the United States Supreme Court and the other courts, to help compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 517 n.10 (W.D. Pa. 2003); *Ikon*, 194 F.R.D. at 195.

7.    **The Lack of Any Government Investigation and the Fact that All Benefits of the Settlement Are Attributable to the Efforts of Lead Counsel Support Approval of the Fee Request.**

The Third Circuit has advised district courts to examine whether class counsel benefited from a governmental investigation or enforcement actions concerning the alleged wrongdoing, because this can indicate whether or not counsel should be given full credit for obtaining the value of the settlement fund for the class. *See Prudential*, 148 F.3d at 338. Here, the only government investigation was one that related to Defendant Erbey and Ocwen Financial Corp., which Defendant Erbey strenuously argued was unrelated to this Action. Moreover, regulators presumably examined bringing charges against RESI, but declined to do so. Accordingly, the entire value of the Settlement achieved is attributable to the efforts undertaken by Lead Counsel in this Action. This fact increases the reasonableness of the requested fee award. *See, e.g., AT&T*, 455 F.3d at 173; *In re Cigna Corp. Sec. Litig.*, No. 02-8088, 2007 WL 2071898, at *6 (E.D. Pa. July 13, 2007); *In re Vicuron Pharm., Inc. Sec. Litig.*, 512 F. Supp. 2d 279, 287 (E.D. Pa. 2007).

8.    **The Percentage Fee That Would Have Been Negotiated Had the Case Been Subject to a Private Contingent Fee Arrangement Supports Approval of the Fee Request.**

The Third Circuit has also suggested that the requested fee be compared to "the percentage fee that would have been negotiated had the case been subject to a private [non-class] contingent fee agreement." *AT&T*, 455 F.3d at 165. A one-third fee is consistent with typical attorneys' fees in non-class cases. *See Ocean Power*, 2016 WL 6778218, at *29. If this were an individual action, the customary contingent fee would likely range between 30 and 40 percent of the recovery. *See, e.g., Id.*; *Ikon*, 194 F.R.D. at 194 ("[I]n private contingency fee cases, particularly in tort matters, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery."); *Blum*, 465 U.S. at 903 (Brennan, J., concurring) ("In tort suits, an attorney

might receive one-third of whatever amount the plaintiff recovers.").  Lead Counsel's requested fee of one-third of the Settlement Fund is fully consistent with these private standards.[8]

### 9. The Skill and Efficiency of the Attorneys Involved Support the Fee Request.

The skill and efficiency of counsel is "'measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.'"  *Hall v. AT&T Mobility LLC*, No. 07-5325 (JLL), 2010 WL 4053547, at *19 (D.N.J. Oct. 13, 2010).

It required considerable skill to achieve the proposed Settlement for the benefit of the Settlement Class. Lead Counsel were required to contend with, among others, issues particular to RESI's interrelatedness with Defendant Erbey's other companies and related loss causation and damages issues. *See* Apton Decl. at ¶¶34-36 (discussing particular risks in litigation). With respect to "the experience and expertise" of counsel, as set forth in the firm resumes attached to the respective declarations of Lead Counsel and Liaison Counsel (*see* Supp. Apton Decl. at Ex. A and Rames Decl. at Ex. C), counsel are highly experienced and skilled firms in the securities litigation field, and each firm has a long and successful track record in securities cases throughout the country.

"'The quality of opposing counsel is also important in evaluating the quality of counsel's work.'"  *Hall*, 2010 WL 4053547, at *19; *In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 WL 4225828, at *7 (D.N.J. Nov. 28, 2007). Lead Counsel was opposed by Mayer Brown LLP and Sullivan & Cromwell LLP, very skilled and highly respected defense firms representing the Defendants. They spared no effort in the defense of their clients. In the face of

---

[8] Another factor the Third Circuit asks district courts to consider is whether the settlement contains "any innovative terms." *Diet Drugs*, 582 F.3d at 541; *Prudential*, 148 F.3d at 340.  This Settlement does not, because Lead Counsel believe that an all cash recovery is the best remedy for the injury suffered by the Settlement Class.  In these circumstances, the lack of innovative terms "neither weighs in favor nor detracts from a decision to award attorneys' fees." *In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002, 2012 WL 5467530, at *6 (E.D. Pa. Nov. 9, 2012).

this knowledgeable and formidable defense, Lead Counsel was nonetheless able to develop a case that was sufficiently strong to persuade the Defendants, and their insurance carriers, to settle on terms that are favorable to the Settlement Class.

### E.   Lead Counsel's Litigation Expenses Are Reasonable and Should Be Approved for Reimbursement.

Lead Counsel also request payment of $250,035.47 in expenses incurred in connection with the prosecution of this litigation.  This is less than was requested in the Notice.  Counsel's fee declarations attest to the amount and accuracy of their expenses. Supp. Apton Decl. at ¶¶15-18; Rames Decl. at ¶8 & Ex. B. To date, there has been no objection to the request for expenses.

The appropriate analysis to apply in deciding which expenses are compensable in a common fund case of this type is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace.  *See In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001) ("[c]ounsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action") (citing *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995)); *ViroPharma*, 2016 WL 312108, at *18 (same); *Hall*, 2010 WL 4053547, at *23 ("Courts have generally approved expenses arising from photocopying, use of the telephone and fax, postage, witness fees, and hiring of consultants.").  The categories of expenses for which counsel seek payment here are the type of expenses routinely charged to hourly clients and, therefore, should be paid out of the common fund. These expenses largely consist of expert fees, travel expenses, and mediation fees.

### F.   Plaintiffs Should Be Awarded Incentive Awards.

The PSLRA, 15 U.S.C. § 78u-4(a)(4), limits a class representative's recovery to an amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class," but also provides that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class."

Lead Counsel has requested incentive awards in the amount of $11,429 and $5,250 for Plaintiffs that were involved in the litigation from start to finish and assisted in (a) conferring with counsel concerning the issues and strategy in the case; (b) reviewing court filings in the Action and periodic reports from counsel concerning the work being done; (d) conferring with counsel with respect to settlement and mediation efforts; and (e) researching and collecting relevant documents and sitting for depositions for discovery. *See* Supplemental Declaration of Lei Shi, ¶2; Supplemental Declaration of Ashley Saunders, ¶2. Plaintiffs committed a substantial amount time to the prosecution of this lawsuit; specifically, upwards of 75 hours collectively. *See* Supplemental Declaration of Lei Shi, ¶5; Supplemental Declaration of Ashley Saunders, ¶5. The incentive awards Plaintiffs seek are reasonable under the circumstances. *See, e.g., Forsythe v. ESC Fund Mgmt. Co. (U.S.)*, No. CIV.A. 1091-VCL, 2012 WL 1655538, at *8 (Del. Ch. May 9, 2012) (awarding awards of $35,000, and $20,000 to lead plaintiff who sat for a one-day deposition). Such awards encourage the public policy goal of private prosecution securities frauds as described above. *See Tellabs*, 551 U.S. at 313 (citations omitted). Moreover, no objections to the incentive awards have been made. Accordingly, the incentive awards should be approved as reasonable.

## III.   CONCLUSION

For all the foregoing reasons, Lead Counsel respectfully requests that the Court grant Plaintiffs' motion in its entirety.

Dated: December 26, 2019                    Respectfully submitted,

**K.A. Rames, P.C.**

/s/ Kevin A. Rames
Kevin A. Rames (VI Bar No. 193)
Suite 3, 2111 Company Street
Christiansted, St. Croix, U.S.V.I. 00820
Tel.: (340) 773-7284
Fax: (340) 773-7282
Email: kevin.rames@rameslaw.com

*Liaison Counsel for Class*

**LEVI & KORSINSKY, LLP**
Nicholas I. Porritt (admitted *pro hac vice*)
Adam M. Apton (admitted *pro hac vice*)
1101 30th Street NW, Suite 115
Washington, DC 20007
Tel.: (202) 524-4290
Fax: (202) 333-2121
nporritt@zlk.com
aapton@zlk.com
*Attorneys for Plaintiffs*
*And Lead Counsel for the Class*